and I. B. It's case number 420-0434. Council for the appellate, please state your name. Scott Dempsey. Thank you. And to counselors for the Appalachian County District.  Lee, please state your names for the record. Scott Werner for Nicholas Drinkwater. Chad Beckett for Stephen Bertrand. Okay, Mr. Beckett, I could not hear you either. Maybe closer or speak up a little. Chad Beckett for Stephen Bertrand. Okay, very well. And I understand that you have discussed with the clerk how you're going to divide your time in your argument. Correct? Yes. All right. Very well, then, Mr. Dempsey, you may proceed. May it please the court, counsel. In this case, the trial court abused its discretion in imposing sanctions against the petitioner's appellants. Michelle drew and Brad drew in several respects. First, the court should have conducted an evidentiary hearing in the court's failure to do so constitute an abuse of discretion. And secondly, granting the motions for sanctions were filed by both Appalachian Nicholas Drinkwater and Stephen Bertrand constitute an abuse of discretion in several respects. Most importantly, because the trial court imposed the wrong standard in determining whether or not the petition for guardianship and the petition to determine the existence of a parent child relationship filed by the Druze in the case violated Supreme Court Rule 137. It's important to note that the Druze only filed two petitions in this guardianship case. Now, there'll be lots of discussion about petitions filed in other cases, or perhaps the Druze involvement in other cases. There may be discussions about a divorce case in Champaign County involving Paige Bertrand, who's the mother of these two children, and Nicholas Drinkwater, and some modification of allocation of parental responsibilities in that case. That case was subsequently after the trial court granted motions for sanctions was transferred to Douglas County. There may be some discussions about a divorce case involving Stephen Bertrand and Paige Bertrand. Again, this case was never consolidated into those two cases. The court never took judicial notice of those other two cases. And so the trial court's focus and this court's focus really should be on what the Druze did in this guardianship case. If I may, it seems as though the trial court, without saying so, did take judicial notice of those cases because they were referenced so much, not only by the court, but by the parties as well. I don't think that constitutes judicial notice. I think if the court was going to take judicial notice, I think the court would have made that statement on the record of the court taking judicial notice of those proceedings. First off, it's important to note that the Drinkwater case involving Paige Bertrand and Nicholas Drinkwater, that case had not even shown up in Douglas County yet. That case was not transferred to Douglas County, I believe, until June 17th of 2019. The hearing on the motions for sanctions was held on April 30th of 2019. So I'm not sure how the trial court would have even had the documents from that Champaign County case before it at that time that it could have taken judicial notice of. In any event, I think if the court was to take judicial notice of those proceedings, I think that's something the court should have made on the record. None of the counsel in this case made a request that the trial court take judicial notice of those other proceedings. There were no pleadings from those other cases that were attached to the motions for sanctions. In this case, they were offered as evidence at the April 30th, 2019 hearing on the motions for sanctions. If I may, again, though, didn't you yourself refer to those cases frequently in making presentations to the court or representations to the court? I don't believe that I ever referred to either of those cases at the April 30th, 2019 hearing. Again, I think there was a fair amount of confusion, especially with the trial court, over what the real issue was on the motions for sanctions. I think the trial court did reference those other proceedings. Initially, in making its ruling, the trial court said it wasn't appropriate for the Jews to try to intervene in those proceedings. It gained change when they filed their petition to intervene in those proceedings. I think trial court's focus was not on whether or not there was some pleading that was filed in this guardianship case that violated Supreme Court Rule 137 because it was not a plea that was based on fact or an extension of existing law, was not well-based in fact, or that was done for an improper purpose in this guardianship case. Obviously, the trial court had an issue with what the Jews may have done in those other cases. If that's the case, that could be a separate basis for sanctions in either the Drinkwater dissolution case or the Bertrand dissolution case. If the trial court had an issue with whether or not they should have intervened in those cases, what the Druze roles were in those cases, that's a separate issue that could have subjected the Druze to motions for sanctions in those cases. But the issue is whether or not the only two pleadings the Druze filed in this guardianship case, which was the petition for guardianship or the petition to determine the existence of a parent-child relationship. If either of those petitions were filed for improper purpose, they could result in sanctions being imposed on the Druze pursuant to Supreme Court Rule 137 or whether or not those petitions were not based in fact or not based on an argument that existing law could be extended to cover what the situation is that the Druze had in this case. And it's not clear from the motions for sanctions that were filed by Bertrand or Drinkwater that they don't reference any specific statement in either of those petitions that they believe to be a false or untrue statement. And, again, it appears that most of their argument is that these petitions were somehow filed for an improper purpose. And I think the case law is quite clear on that. If the basis for the motion for sanctions are that the petitions are filed for improper purpose, then the court must conduct an evidentiary hearing to determine what that improper purpose is to allow the Druze the opportunity to be able to present evidence that, no, this was not filed for an improper purpose. They had physical custody of these two children that they had and that they in good faith believe that both of the parents had voluntarily relinquished physical custody of the children to the Druze and they had physical custody of these children for a fair amount of time prior to the time that they filed their petition for guardianship in this case. And so, again, the only thing that the Druze did was they filed their petition for guardianship. They filed their petition to determine the existence of a parent-child relationship. And then there was a status hearing. And then at the next hearing, the Druze dismissed their petition for guardianship. And it appears at the hearing on April 30th of 2019 that the trial court improperly shifted the burden of proof in this case and that simply because the Druze dismissed their petition for guardianship, the trial court improperly concluded that really sanctions should be imposed. And it's not clear from what the evidentiary basis of that is since there had not been a prior evidentiary hearing in this case. And the case law is clear that if there had been prior evidentiary hearings in the case, then the court was not required to conduct a separate evidentiary hearing on the issue of the sanctions, regardless of what the basis for the sanctions motions were, whether or not it's based on filing an untrue pleading or whether or not it's based on filing a pleading for improper purpose. If there had been prior evidentiary hearings in which the Druze had been able to present their evidence, then the court was not required to conduct a separate evidentiary hearing on the issue of sanctions. But in this case, if you simply look at the pleadings in the guardianship case, it's not clear what the court was referring to in the reference to the other cases. I mean, I think the trial court has an obligation if they're going to impose sanctions to specifically refer to what evidence they are basing the finding of sanctions on from the other cases. There's some pleadings or something in the other cases that the trial court referenced that would lead the trial court to believe that this, what the Druze did in this case was something to subject them to sanctions. But again, if the trial court, again, it appears that the trial court is saying you shouldn't get involved in those other cases. And therefore, we believe that somehow this guardianship case was filed for an improper purpose. That's something that should have triggered an evidentiary hearing where the Druze would have been able to explain why they filed the guardianship case, what they did. Instead, the trial court simply said, well, we'll never know why the Druze dismissed their petition. We'll never know what the evidence is. We think they'll have a hard time. They would have had a hard time establishing that they had standing to pursue guardianship because of what the trial court, I guess, was able to glean from these other cases. But whether or not the Druze would have had a hard time establishing that they had standing to seek guardianship is not the same as a plea that's being filed for an improper purpose or a plea that contains some false statement of fact or that the Druze did not conduct appropriate investigation before filing their petitions. The purpose of sanctions is not to dissuade people from filing cases unless they're absolutely 100% sure that they're going to be able to prevail in the case. In this situation, the Druze, again, had physical custody of the children. That's something that the trial court acknowledged in its ruling that, yes, the Druze had physical custody of these children. Neither of the parents seemed to dispute the fact that the Druze had physical custody of these two children at the time they filed their guardianship case. But again, as I referenced earlier, I believe the trial court used an incorrect standard for determining whether or not the Druze should be sanctioned in filing a petition, even though they had physical custody of those children. The trial court initially indicated in its ruling that, on page 17 of the transcript of the April 30, 2019 hearing, and said after acknowledging that the Druze had physical custody, that yes, they would be able to file under statute or by law a petition for guardianship and that anyone can file a guardianship petition as long as there is a parent who is willing and able to provide care for the children. But the court said, well, that's not enough. I think sanctions are appropriate because we had two parents out there who were willing and able to make child care decisions. The court basically indicated that the way the court viewed the guardianship petition, that it would be necessary for the Druze to determine that both Drinkwater and Bertrand were unfit parents for them to be able to prevail on their guardianship petition. And then on page 18 of the transcript, the trial court says that simply having physical custody is not enough because there's the added element that the Druze were required to show that each of the respondent fathers was unfit, or for some other reason, unable to provide for the daily care and control of those minor children. And that's not what was alleged in the Druze petition. There are multiple bases under the guardianship statute for establishing standing of a non-parent to be able to bring a guardianship petition. Mr. Dempsey, let me ask you a question. So at that April 30th hearing, did the Druze object to the court moving forward on the issue of the amount of the fees? Did they ask for a continuous, they asked the court to set it for a hearing on the issue on the merits? Yes, three times I indicated to the trial court that these were all issues that required an evidentiary hearing. So there's three times during the proceeding that I indicated to the court that the court needed to conduct an evidentiary hearing on all the motions for sanctions to determine what the facts are in this case, whether or not the fees were reasonable, whether or not the services were provided were related to this case even. So there's three times in that transcript where I requested that the court conduct an evidentiary hearing on the motion for sanctions filed by Drinkwater and Bertrand. And so what did the court say in denying, you're saying you made a motion three times? What was the court's order on that motion? The court really didn't address that. So I mean, there's three times during my argument, I indicated that the court should conduct an evidentiary hearing to allow the Druze to be able to testify about what their knowledge was, why they had, they believe that they had physical custody of the children that had been voluntarily relinquished from, or voluntarily relinquished to them by both of the parents about the fact that they were making all the decisions for these children, even though they had other parents who were available. The court really didn't address that. They simply went into its ruling and found that sanctions were appropriate. So I'm not sure the court necessarily ruled one way or the other as far as whether an evidentiary hearing would be required. But I think that there's no way that the court would be able to determine, especially if the theory is that these petitions were filed for an improper purpose, which clearly appears to be the basis for sanctions on both of the motions for sanctions. If that's the case, the case law requires an evidentiary hearing. And clearly, both of the parents believe, as evidenced by their briefs, that this was a coordinated effort between the Druze and Paige Bertrand, that Paige Bertrand was somehow having some sort of difficulties, and that this was a coordinated effort between the Druze and Paige Bertrand to give Paige Bertrand time to get her act together, find a place to live, to regain custody. This was a coordinated effort on the part of the Druze and Paige Bertrand to be able to give her time so that she could then address the pending issues in the divorce case she had with Nicholas Drinkwater and Stephen Bertrand. If that's the theory that was being pursued by both Nicholas Drinkwater and Stephen Bertrand, I don't think there's any... the court had to have allowed an evidentiary hearing. The court can't conclude that just because the Bertrand or the Druze voluntarily dismissed their petition for guardianship that somehow that it creates an automatic presumption that they dismissed their petition because they knew that they were not going to be able to meet the standing requirement of the guardianship statute, or they knew that they filed this petition for an improper purpose. And without some sort of prior evidentiary hearing in this case, the court simply did not have the facts that were necessary to make the determination that either there was a false statement in any of the pleadings that they filed, or that the pleadings were filed for any sort of improper purpose. And in ruling on the motions for sanctions, again, it's clear that the court used the incorrect standard for determining whether or not the Druze could have established that they had standing to seek guardianship. So under 755 ILCS 511-5, which contains the standing requirement for non-parents to seek guardians, there's multiple ways in which a non-parent has been standing for guardianship. The court focused exclusively on the first statement in subparagraph B of the statute that says the court lacks jurisdiction to proceed on a petition for appointment of a guardian if the court finds that the minor has a living parent whose rights have not been terminated, who is willing and able to carry out day-to-day child care decisions. However, after that, there are multiple exceptions to that basic premise. And the first one is if the parent or parents voluntarily relinquished physical custody of the children to the non-parent. And that's what was alleged in this particular guardianship petition. It wasn't alleged that the parents were unfit, that they were unable or unwilling to make day-to-day child care decisions. It was alleged that they had voluntarily relinquished physical custody of the children to the Druze. And that was not in any way part of the trial court's analysis. And the trial court's analysis was that, well, the Druze would have had this extremely high burden of proof of showing that both all the parents were unfit, or they're unable or unwilling to make day-to-day child care decisions, and that the trial court didn't even address what the guardianship petition was based on, which is that the parents voluntarily relinquished physical custody of these children to the parents. And that, as we indicated in our brief, is a detailed, fact-dependent analysis that is a question of fact for the trial court to decide. It's not something that can be decided based on simply the face of the pleading. And I would suggest that I don't believe there's anything inconsistent with both of these fathers, Nicholas Drinkwater and Stephen Bertrand, having voluntarily relinquished physical custody of these children to the Druze, and yet still trying to pursue something within their separate divorce cases. If the Druze had physical custody of these children well before Drinkwater or Bertrand filed their petitions, it was only after they learned that the Druze were planning on filing some sort of guardianship petition, they decided to pursue their rights. And the court can look back at the history of how the Druze obtained physical custody of these children, how long they had had them, what sort of decisions they've been making for these children. You know, this is with the full knowledge and consent of the two fathers in this case. Those were all facts that the court needed to hear if they were going to properly analyze this case under the basis for which the Druze actually filed this petition for guardianship. Not unfitness, as the trial court found, or not based on a failure to their inability to make day-to-day childcare decisions. And I think it's significant to compare this case with the Hess v. Lloyd case that's decided by all the parties in this case. In that case, which basically involves interpretation of contract, which was an employment contract between attorney and his law firm, the appellate court said, well, clearly we don't need evidentiary hearing on this because we can read the contract, we can read the fee agreement between the attorney and the client, and that's something we can decide without an evidentiary hearing. That's not this case where whether or not a parent has voluntarily relinquished physical custody of these children to the Druze is a fact-dependent analysis. And simply looking at the pleadings, either in this case or even if the court looked at the pleadings in the other divorce cases, that's not something the court would have been able to determine just by the face of the pleadings without hearing evidence from the Druze, from Drinkwater, from Bertrand. And again, the Drinkwater and Bertrand had the burden of proof in this case. Simply dismissing the petition by the Druze doesn't create a presumption that sanctions are somehow warranted in this case. And I think, again, the fact that Stephen Bertrand was awarded over $700 in fees in this case, in this guardianship case, that had absolutely nothing to do with this case, illustrates why an evidentiary hearing, not only on the merits of the guardianship petition, but on the fees was warranted. In his petition for fees, Bertrand included attorney's fees that were not related to this case. There were no hearings in this case that were conducted on the dates in which he was awarded attorney's fees for. And those were fees that he incurred in his divorce case with Paige Bertrand. There were not hearings that occurred in this case. And I think that's just illustrative of why summary disposition of motions for sanctions without presentation of evidence, both onto the merits of the petition and the reasonableness and necessity of fees, was an error in this case, because ultimately my client's reward was to pay $700 in attorney's fees for something that Stephen Bertrand incurred in a separate divorce case with Paige Bertrand that had absolutely nothing to do with this case. Okay, you're out of time, but you will have rebuttal. Either Mr. Lerner or Mr. Beckett, please. Can you hear me? All right. Justice Harris, can you hear me? I can. Okay. The attorneys cannot hear me. Can I take it? All right, well, no, I can hear you. I can hear you, Mr. Lerner turned his microphone off. Mr. Lerner may go ahead I can, I will. Mr. Lerner needs to unmute himself, Mr. Beckett said for you to go ahead. Okay, can you hear me now. I can hear you now. All right, thank you. And may it please the court and counsel. Before I guess the first thing I wanted to talk about is Mr Dempsey's belief that you need to use somehow magic words I'm taking judicial notice of this. In order to take judicial notice of something, or that the court somehow has to work in the dark, and not consider court orders or findings relating to other cases involving the same parties in the same issues. And I just disagree with that. Do you have any authority to support your assertion that there doesn't have to be some explicit statement by the court that it's taking judicial notice of something. I think in my brief I talked about that, what the court couldn't couldn't take judicial notice of I guess I did not research, the specific issue of do you need to use those magic words, but nor did Mr Dempsey so I think this is sort of a new issue as to whether we have to use these magic words. But I think that of course certainly can consider those factors this court did consider the other thing I just wanted to briefly touch on before talking about some other things is this issue of did these people did these fathers somehow have the guardianship filed and also say oh maybe we want our children because the guardianship was filed, and that's just not the order of things. In champagne kale me case, 2008, the 40 the father filed a motion on September 29 2018 to seek majority parenting time, the druids filed a motion to intervene in November 9 of 2018, and they did not until November 16, knowing about these petitions seeking primary parenting time today. Wait until they filed their motion for guardianship. The guardianship case was filed March 28 2019 are there was probably November 16, and then they dismissed it on March 28 2019. The druids withdrew their motion intervene to 28 or 2018 40, but the divorce case was transferred to Douglas County and became Douglas County case 2019 D 24, the guardianship petition was filed on 1116 2018 on December, or on November 16 on December 16 2018, I filed a motion to dismiss and a memorandum of law, essentially, stating that they didn't have standing to proceed in this manner. The court heard a hearing related to guardianship on January 31 2018. And the druids filed a motion to dismiss the guardianship on March 1 2019. In addition, the druids attorney then entered his appearance on behalf of the mother in the divorce, despite taking the position that essentially, she was unfettered unwilling to act as a child's parents and the guardianship proceeding. I did file a motion, claiming there was a conflict there on the Supreme Court rule 1.7 that was denied in Champaign County. Now, Mr. Dempsey is making this argument that the trial court aired in not having a full hearing on the underlying issues related to the guardianship case, he voluntarily dismissed. And this argument is really absurd. First of all, Mr. Dempsey never bothered to respond to the motion to dismiss guardianship and the memorandum of law. He certainly had an opportunity to present his case as to any legal argument in writing at that time. Then when we all had to appear in court to have a hearing on the guardianship case, Mr Dempsey voluntarily dismissed the case. And to assume that that was because this is frivolous or unwinnable is not an outrageous assumption on the part of the court. And there is certainly an argument that this delay allowed this child to live with a non-relative for four months. But, unlike what Mr. Dempsey said, the argument is he certainly benefited from it. That is a factor to consider. But in and of itself, is that their sole motivation? I don't know, but it certainly is something to be considered. Even this appeal, they have managed to delay this case, avoid paying the sanctions for an extraordinary amount of time. And again, does that prove that that was the purpose of filing this appeal? No. But I think combined with everything else, it certainly leads me to believe they're acting in bad faith. It just seems odd to me that they are arguing that the trial court abused its discretion by not having a full evidentiary hearing when Mr. Dempsey did everything he could to avoid evidentiary. You know, he complains, hey, they set fees based on pleadings and affidavits, which certainly in the divorce context is allowed in the 508. But sure, he complains about that, but he never filed a response to the fees requested. He had the opportunity to object to them in writing. He had an opportunity to claim these people had standing in writing, but he didn't respond to any of the pleadings. But now he comes back and says the court abused its discretion when the court gave him every opportunity to do so. If this court were to accept Mr. Dempsey's argument, I think the precedent would be to encourage rather than discourage the violation of Supreme Court Rule 137. File an inappropriate pleading, have the child remain in limbo for months until a hearing date, dismiss the case before it can be heard, and then you avoid all consequences by a claim that the court didn't have a hearing because you dismissed the case. The argument is counterintuitive and I don't think it's a good precedent. Not only did the court act within its discretion, but it did so in a manner that greatly benefited Mr. Dempsey's clients. Mr. Dempsey's argument appears to be that the court should have held a full evidentiary hearing on the motion he had already dismissed. A matter that can be and was decided as a matter of law based on the pleadings and prior hearings and all those things the court relied upon. Mr. Dempsey's position that we need to spend additional time and cost additional attorneys fees would not benefit his clients, but the alternative would cost them a lot of money. We're here before the appellate court and it's an honor to be here, but there's been a lot of attorneys fees spent, transcripts have been bought, we've been going back and forth and all sorts of things for a judgment of less than $2,000. And I think that shows a lack of concern for Mr. Dempsey for money. And I've got no problem with that. But if he's spending his clients money and they don't have a problem with that, that's great, but he's not he's spending my clients money. He's spending Mr. Beckett's money. And I would argue that we should be entitled to attorneys fees and costs associated with the appeal. And again, I think the court can determine these claims within these pleadings that the father wasn't involved at all that they abandoned these children to the druze was was nonsense. How could they intervene in a case where the father's claiming the mother was not as involved as she should have been and say we need to take over. How do they claim that that person abandoned his children. And when he's paying child support when he's doing everything he's supposed to do. How is that a good faith argument in any way. I would Then give this to Mr. Beckett unless anybody has a question for me. I don't see any questions. Mr. Beckett You have to unmute Thank you. May it please the court and counsel. I'd like to join on what Mr. Lerner has said so far and add the following Very, very straightforward and basic crux of this case can be identified in the text of the petition. If one looks at paragraph seven Pages see a and see nine of the record of the, the original petition for guardianship. One sees the following allegation that the miners parents have voluntarily relinquished physical custody of the minor to the petitioners. That was an out and out false statement. It was signed by Mr. Dempsey, along with the other allegations and it was verified by both of the petitioners. The record that existed at that time demonstrated that it was false. And by record, I mean the divorce cases. One day before this petition was entered my client filed an emergency petition to modify Parenting the parenting situation, precisely because that was when he was he learned that the mother was not exercising the rights of the children. And we know that the petitioners in this case know that the appellants in this case know that because they including Mr. Dempsey filed a motion to intervene. Five days later. Going forward after the the druze dismissed their petition voluntarily I filed on behalf of my client, a petition for sanctions. And in that petition I make reference to this state of affairs that I just recounted to your honors. This is for this is at page C 34 and onward in there. I make specific reference to the divorce case. Again, something that the druze were aware of because they had intervened in that case in which we had hearings in that case between the entry of Mr. Dempsey in that case, all the way through to when the petition was in the guardianship case was dismissed. And the hearing on sanctions was held. We were delayed in that case because of this case. And in the court case in the order from the trial court in the guardianship case awarding sanctions, the court made reference to the allegations that are in my petition, a petition that the druze for whatever reason, never filed a response to. And did not substantially contest except for procedural basis at the hearing. At no time during the hearing that I can recall, did Mr. Dempsey say, your honor, I think we should stop. I move to continue. I move for an evidentiary hearing those words were never spoken, your honor, your honors. And instead, we're being treated to the notion that after the fact, things should have been done differently, such as the question of judicial notice, your honors were asking about the authority. I can only go back to the originally stated decisions of the Supreme Court in determining the evidence, and it specifically Illinois rule of evidence to a one talks about the kinds of facts that can be taken when they may be taken an opportunity to be heard. Subsection he says a party is entitled upon timely request to an opportunity to be heard as to the proprietary of taking judicial notice. I made it clear in my petition for fees that this was a relevant issue and that I wanted it addressed. The court picked up on that. Also, I brought it up during the hearing, Mr. Lerner brought it up during the hearing, and the court very clearly addressed it. To say after the fact that somehow the divorce case that Mr Dempsey entered his appearance on behalf of the Druze for has nothing to do with these proceedings and that we should just set it aside and focus squarely and solely and like as if it's in a vacuum on this one hearing as if nothing else had happened is just not appropriate. It isn't, it isn't the law, it isn't the facts, and it is. I in over 20 years, I understand that your honors have been exposed to your share of her probably over the years, but in 20 years I have to say, I have not been able to find a better case where reception look what applies. It's just stands on its face that these litigants did not pay attention at best, or more likely that they simply ignored the facts of the case that stated, neither of these police had accepted the seizure of possession of their respective children by the Druze. They never had custody, they took possession. And because of the circumstances of my clients and because they didn't want to be in the Wild West and seize possession, we're supposed to be your honors are being asked to say that we consented to this. And that's a terrible, terrible precedent to send. I think all of us know that, for all the reasons stated in my brief as what Mr learned center where I've said today, I asked that the appeal that the appeal be denied and that the fees be approved as stated that our appellate fees be granted as well. Thank you, Mr Beckett. Can you speak to Mr Dempsey Dempsey's representation that somehow, your client was awarded fees that he incurred as part of the divorce case and not part of this case. I can, I can do it as follows your honor. First of all, Mr Dempsey never filed a response to my petition for fees. He did not address any of the specific fees at the hearing. After the hearing was over, to my knowledge, he did not address those fees. He has raised it essentially for the first time on appeal and I believe that position is waived. However, in addition to that, as I've stated, Mr Dempsey and the Druze intervened in the divorce case. And through that intervention did so on the basis of this guardianship and that action was part of the reason why my client had further delay and was unable to exercise visitation and parenting time with his child. And as such, to the extent that any such fee was charged for any other hearing. It was precisely because of the Druze intervention and interference with my client's parental rights as occasioned by their filing and their prosecution until they dismissed it of the guardianship petition. But I state above all, there was never a timely objection to those fees. Okay. Thank you, Mr. Beckett. Mr. Dempsey, do you have any rebuttal? Yeah, I think what Mr. Beckett just said illustrates why an evidentiary hearing, not only the merits, but on the issue of the fees prevails. There's nothing from what Mr. Beckett just represented. It was contained in his unverified petition for attorney's fees. So there's no affidavit of attorney's fees that he submitted in support of his request for attorney's fees explaining what he just explained to this court, explain why he believed that those fees incurred in the Bertrand divorce case not in this case for somehow related to the Druze guardianship case, and it really had nothing to do with the guardianship case whatsoever. This was a hearing that occurred on March 1 of 2019 in the Bertrand dissolution case. So this is a hearing on allocation of temporary parental responsibilities. Again, that had absolutely nothing to do with the guardianship case. If, as Mr. Beckett claims that the guardianship case was designed to delay the proceedings and divorce case. This was a hearing that occurred on March 1 2019 before the Druze dismissed their petition. So that case is going on at the same time. So, that doesn't explain why my client was charged and why the trial court found that these fees from March 1 2019 February 26 2019 which is referenced as a conference with LTS relating to March one night 2019 hearing a phone conference on February 20 2019. There's no record of a phone conference in this guardianship case. Charge for prepare and facilitate telephone conference on February 14 2019. There was no phone conference in this case on February 14 of 2009. So, the say that somehow these fees should have been a word to his client was told $700 for time spent solely on the Bertrand divorce case has absolutely no bearing whatsoever to the guardianship case. And these were objected to at the trial court level as part of the motion to reconsider it was filed but the trial court simply abuses discretion by finding that these fees which total $700 were related to the Drew guardianship case. And I think there's been confusion of the issues of whether or not the trial court to consider pleadings and other cases, and whether or not the trial court should sanction the Druze in the guardianship case based on what they may or may have not done in the other guardianship cases. Those are two complete separate issues from an evidentiary basis. I mean if the court trial court in this guardianship case was going to take judicial notice of those proceedings. In other cases, that's fine. The court could have done that had that court made that on the record. But still, what these parties are arguing is in the vast majority of their argument was based on the fact that the Drew should be sanctioned because of what they did in these other divorce cases. That's not what this issue is about. This issue is about whether or not they made some sort of false statement in their petition for guardianship or the petition determined the existence of a parent child relationship or whether or not those petitions were filed for an improper purpose and based on the Applebee's arguments in this case and it's clear that both the Applebee's believe that this, these petitions were filed for improper purpose. And then again this is designed to give Paige Bertrand time to get her act together and get the children back. Again, that is the case law is clear that that requires an evidentiary hearing to determine even if the court was to take judicial notice of pleadings in other cases, the fact that they're claiming improper purpose requires an evidentiary hearing there's been a lot of talk from both the Applebee's as well as the trial court about what the Drew's knew what their intent was, they should have known this they should have known that again that illustrates how the trial court made these determinations without conducting evidentiary hearing without the Drew's testifying without the court having a factual basis and assuming they knew certain things, or the Applebee's in this case, assume that the Drew's knew certain things again the uncontradictory facts are the, the Drew's had custody of these children and Mr learner referenced his motion to dismiss based on lack of standing, but significant to note that in the context of the guardianship case for the issue of standing standings affirmative defense, it's not a basis for a motion to dismiss so that's an affirmative defense that either of the respondent fathers could have raised. But they, they never raised it in this case, Mr learner made an issue about the amount of money that's an issue in this case versus the fact that this is this. This appeal in either of these parties could have collected this judgment at any point the Jews did not file motion to stay the judgment based on appeal bond, either of the parties could have collected this judgment at any point, the fact that they haven't exercised their rights to try to collect the judgments for attorneys fees at this point is not anything that Drew's are responsible for they could have possibly had the full judgment paid by now, but this appeal is certainly based on existing law in this case, certainly a trial court abuses discretion by not conducting evidentiary hearing that's clear that that's well established case law in Illinois. This appeal is not filed for any sort of improper purpose that would warrant this court further sanctioning the Drew's by awarding the attorneys fees incurred by both of the respondent fathers in this case, because the appeal is supported by the case is submitted in the court now stands in recess.